1

2

3

4

5

6

7

8    NOT FOR CITATION

9    IN THE UNITED STATES DISTRICT COURT

10    FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12    FREDERICK WAYNE SMITH,                )    No. C 06-00103 JF (PR)
                                            )
13                    Plaintiff,            )    ORDER GRANTING DEFENDANTS'
                                            )    MOTION FOR SUMMARY JUDGMENT;
14            vs.                           )    DENYING PLAINTIFF'S CROSS-
                                            )    MOTION FOR SUMMARY JUDGMENT
15    LORI BREE, et al.,                    )
                                            )
16                    Defendant(s).         )
      _____ )   (Docket Nos. 94 & 107)
17

18            Plaintiff, a state prisoner proceeding pro se, brought the instant civil rights

19    complaint pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights

20    by officials of Pelican Bay State Prison ("PBSP").  Finding that the complaint, liberally

21    construed, stated cognizable claims, the Court ordered service upon Defendants.[1]

22    Defendants Joann Hartman and Lori Bree move for summary judgment.  (Docket No.

23    94.)  Plaintiff has filed opposition and a cross-motion for summary judgment, (Docket

24    No. 107), and Defendants have filed a reply.

25    _____

26            [1] On November 4, 2009, the Court dismissed all claims against Defendants
      Woodford, Kirkland and Winslow for failure to state a claim.  (Docket No. 82.)  On
27    May 4, 2010, the Court severed the claims against Defendant Korsmeyer and dismissed
      Defendant R. Marino from the action pursuant to Federal Rule of Civil Procedure 4(m).
28    (Docket No. 92.)  The Court ordered Defendants Lee and Hartman to answer to the
      claims against them as alleged in the original complaint.  (Id.)

**DISCUSSION**

## I.     Summary Judgment

### A.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is 'no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted.  See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make

*United States District Court*
*For the Northern District of California*

this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001).

**B.     Statement of Facts**

The following facts are not in dispute unless otherwise indicated. Plaintiff was housed at PBSP from 2005 to 2008. He suffered from hepatitis-C and non-insulin-dependent diabetes. (A. Shittu Decl. at 2.) Bree worked at PBSP as a registered nurse in 2005. Hartman is a registered dietician who was employed as a Food Administrator I at PBSP from 2003 to 2006. (Mot. at 2.)

According to Hartman's declaration, in or about November 2004, changes were made to the outpatient medical diet program at PBSP. (J. Hartman Decl. at 1; Docket No. 95.) The major change in the program was the elimination of the 2400 and 3000 calorie diets, the low-fat/low-salt diet, and the low-fiber diet. (Id.) Inmates who previously participated in the discontinued diets began to receive a standardized "Heart Healthy" diet that was also served to the general-population inmates. (Id.) The "Heart Healthy" diet was developed to meet inmates' nutritional and caloric needs. (Id.) Diabetic inmates also received a nourishment-bag snack with their meal. (Id. at 2.) Insulin-dependent diabetics received a sandwich and a piece of fruit, and non-insulin

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

dependent diabetics received a piece of fruit in their nourishment bags. (Id.)  Medical staff were instructed to discuss these changes with their diabetic patients and teach them how to select appropriate foods from their tray, *e.g.*, to choose peanut butter instead of syrup with their pancakes. (Id.)

According to PBSP policy and procedure, only a physician or dentist can prescribe a medical diet, including a diabetic nourishment bag and they do this by completing a medical-diet Chrono. (Id.)  The Chrono then is forwarded to the Health Care Manager or designee for approval or disapproval.  To implement the changes in the diet program, Hartman instructed physicians and nurse practitioners to use a revised medical diet Chrono to indicate which nourishment bag was required by each inmate. (Id.)  The revised Chrono was intended to replace the previous Chrono, that had included among other things a space to prescribe the 3000 calorie diabetic diet that had been eliminated. (Id.)  Hartman provides copies of the new policy and the revised Chrono that are consistent with her statement. (Id., Ex. A.)

According to Hartman, Plaintiff's doctors issued medical-diet Chronos that authorized him to receive a non-insulin-dependent snack, *i.e.,* a piece of fruit, in March, April and May 2005. (Id.; citing A. Shittu Decl., Ex. A at 22, 25, 29; Docket No. 96.)  Plaintiff alleges that one of these Chronos entitled him to receive peanut butter crackers for a year but that he never received them. (Compl. at 12.)  Plaintiff also claims that he was prescribed the 3000 caloric diabetic diet by his doctor, and that when he did not receive it, he complained to Bree and Hartman. (Id. at 13.)  Plaintiff alleges that Hartman informed him that the 3000 caloric diet only was given "when Doctors order it," and that although she admitted that the standard diet "was not good for diabetics or heart and kidney [patients]," she stated that she only had the power to recommend and inform. (Id.)  Hartman explains in her declaration that the doctors continued to use the old medical-diet Chrono form instead of the revised Chrono, and marked the box next to the discontinued 3000 calorie diabetic diet. (Id.)  Hartman states that these Chronos were issued shortly after the 3000 calorie diabetic diet had been replaced with the

1   Hearth Healthy diet, and that Plaintiff could not receive the non-existent "3000 calorie

2   diabetic" diet.  However, Plaintiff did still receive approximately 3000-3200 calories

3   per day with the Heart Healthy diet and nourishment bag.  (Hartman Decl. at 2.)

4        After Plaintiff had received the non-insulin-dependent snack for several months,

5   Hartman conducted a dietary consult with Plaintiff to address his complaints that he was

6   hungry at night.  (Id., citing Shittu Decl., Ex. A at 31.)  As a dietician, Hartman only

7   could make recommendations to Plaintiff's physician, who had the authority to

8   prescribe a medical diet.  (Hartman Decl. at 2.)  Hartman recommended that Plaintiff's

9   physician  issue a medical Chrono for the insulin-dependent snack, *i.e.*, a sandwich and

10   fruit, even though plaintiff was a non-insulin-dependent diabetic.  (Id., citing Shittu

11   Decl., Ex. A at 31.)  It appears that thereafter, Plaintiff's doctor agreed with the

12   recommendation and prescribed the insulin-dependent snack.  (Id. at 32.)  That

13   prescription remained in effect until August 29, 2005, when another doctor issued a new

14   Chrono changing Plaintiff back to the non-insulin-dependent snack.  (Id. at 92.)

15   Hartman indicates that she was not consulted about the change.  (Hartman Decl. at 3.)

16   However, Plaintiff alleges that Hartman called the dining hall and ordered that his snack

17   be cancelled because he had filed an appeal regarding his diet.  (Compl. at 15.)

18        According to Plaintiff's medical records, Bree saw Plaintiff on September 8,

19   2005, in response to Plaintiff's complaints about his diet.  (Shittu Decl., Ex. A at 98-

20   100.)  Bree noted that Plaintiff appeared to be well at the time, and that he already was

21   scheduled for a follow-up visit in four days.  (Id.)  Plaintiff stated at the follow-up visit

22   that his blood sugar was high because in order to appease his hunger he was eating

23   foods he normally would avoid.  (Id. at 108-109.)  Bree informed Plaintiff that she

24   would find out why his evening snack had been discontinued and would contact the

25   dietitian regarding the reinstatement of his snack.  (Id.)  She also noted that Plaintiff

26   already was scheduled to see the doctor that week.  (Id.)  Bree saw Plaintiff again ten

27   days later, at which time she counseled Plaintiff about diabetic neuropathy and referred

28   him for an appointment with his doctor.  (Id. at 122-23.)  Bree noted that Plaintiff

United States District Court

For the Northern District of California

previously had received the insulin-dependent snack but that his doctor had changed it to the non-insulin-dependent snack.  (Id.)

Hartman states that she tried to talk to Plaintiff about his diet and snack in October 2005, but that he was not interested in talking about it.  (Hartman Decl. at 3.) Hartman also states that she had given Plaintiff guidelines for the management of his diabetes several months earlier, and that she had spoken with him to address his concerns about the amount of Vitamin K he needed as a hepatitis-C virus patient.  (Id.) She provided him with a list of foods served regularly as part of the Heart Healthy diet that are good sources of Vitamin K, and explained that because Vitamin K is needed in very small amounts, it was doubtful that he had a deficiency.  (Id.)  Hartman further advised Plaintiff that he could purchase a multi-vitamin from the canteen if he doubted that his nutritional needs were being met.  (Id.)

Bree saw Plaintiff in December 2005.  Plaintiff explained concerns that he was not getting the appropriate diet, and Bree referred him for an appointment with a doctor. (Shittu Decl., Ex. A at 143-44.)

### C.      Legal Claims and Analysis

Plaintiff alleges that Hartman and Bree were deliberately indifferent to his serious medical needs, violating his rights under the Eighth Amendment.  Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104).  The existence of an

United States District Court

For the Northern District of California

injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but also "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). However, a finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, nor is a finding that a defendant's actions are egregious or that they resulted in significant injury to a prisoner, McGuckin, 974 F.2d at 1060, 1061 (citing Hudson v. McMillian, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")), but the existence of serious harm tends to support an inmate's deliberate indifference claims, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 at 1060).

Hartman and Bree contend that they did not act with deliberate indifference to Plaintiff's medical needs, as the medical records show that Plaintiff's diabetes was well-controlled on the diet he received and that his stage of hepatitis-C did not require a special diet. (Mot. at 6.) Essentially, Defendants argue that Plaintiff's alleged dietary

United States District Court

For the Northern District of California

1  needs did not present a "serious medical need" warranting a special diet, or that the diet

2  Plaintiff did receive created a substantial risk of serious harm.  In support of their

3  motion for summary judgment, they submit the declaration of Dr. Adekunle Shittu, the

4  hepatitis-C and High Risk Patient doctor at Kern Valley State Prison who had held that

5  position for approximately a year at the time of the declaration.  (Shittu Decl. at 1.)  Dr.

6  Shittu has been licensed to practice medicine in California since January 2003 and is

7  board certified in internal medicine.  (Id.)

8  ### 1.    Non-insulin Dependent Diabetes

9  Based on his review of Plaintiff's medical records from 2005 to the present, Dr.

10  Shittu concludes that Plaintiff's diabetes was well-controlled in 2005.  (Id. at 2.)

11  According to Dr. Shittu, an A1C test measures a patient's average blood-glucose control

12  for the previous two to three months and provides a picture of how well a patient's

13  diabetes treatment plan is working.  (Id.)  Dr. Shittu's review of Plaintiff's medical

14  records showed that Plaintiff's hemoglobin A1C measurements in 2005 all were below

15  seven percent, which indicates good control.  (Id., Ex. A at 18, 37, 97, 120, 128, 139.)

16  Dr. Shittu opines that Plaintiff received an appropriate diet for the management of his

17  diabetes in 2005 and continues to receive an appropriate diet to date, i.e., June 18, 2010.

18  (Shittu Decl. at 2.)

19  It is undisputed that Plaintiff is a non-insulin-dependent diabetic.  Although the

20  Ninth Circuit has found that insulin-dependent Type 1 diabetes is a serious medical

21  condition and that failure to provide proper food or insulin creates a serious risk of

22  harm,  Lolli v. County of Orange, 351 F.3d 410, 419-20 (9th Cir. 2003), no legal

23  authority holds that this also is the case for non-insulin dependent diabetes.

24  Based on Dr. Shittu's review of Plaintiff's medical records, it cannot be said that

25  Plaintiff's diet was inappropriate for his diabetic condition.  Hartman and Bree have

26  offered undisputed evidence that they followed the revised medical-diet program at

27  PBSP, which eliminated certain caloric diets and replaced them with a standardized

28  Heart Healthy diet served to the general-population inmates.  See supra at 4.  Under the

United States District Court

For the Northern District of California

1   revised program, Plaintiff was entitled to and did receive a nourishment-bag snack with

2   his meal.  Plaintiff's fanciful contention is that he should have received the insulin-

3   dependent diabetes snack of a sandwich and a piece of fruit because the non-insulin

4   dependent diabetes snack of a piece of fruit was insufficient.  (Id.)  However, as noted

5   above, non-insulin dependent diabetes does not rise to the level of a serious medical

6   condition.  See *supra* at 8.

7        Plaintiff also offers no evidence that Hartman acted with deliberate indifference,

8   as nothing in the record supports that Hartman knew of and disregarded a substantial

9   risk of serious harm to Plaintiff by failing to provide an adequate diet.  Farmer, 511 U.S.

10   at 837.  To the contrary, the medical records show that Hartman recommended that

11   Plaintiff's physician prescribe an insulin-dependent snack even though Plaintiff was a

12   non-insulin-dependent diabetic, and it is undisputed that as result Plaintiff received the

13   larger snack.  See *supra* at 4.

14        It is true that this situation lasted only until August 29, 2005, when another

15   doctor issued a medical-diet Chrono changing Plaintiff back to the non-insulin-

16   dependent snack.  (Id. at 92.)  However, Hartman asserts that she was not consulted

17   about the change, (Hartman Decl. at 3), and Plaintiff's allegation that Hartman called

18   the dining hall and ordered that his snack be cancelled because he had filed an appeal

19   regarding his diet, (Compl. at 15), lacks foundation and in fact is contradicted by

20   Plaintiff's allegations in his complaint that it was Dr. Marino who indicated that

21   Plaintiff should receive the "non-insulin dependent" diet, (Shittu Decl., Ex. A at 92).

22   Moreover, in light of the fact that Plaintiff's blood-glucose levels were normal during

23   this period, Hartman had no reason to believe that Plaintiff's condition medically

24   warranted a different diet.

25        In his opposition brief, Plaintiff claims that there was an exception to the

26   medical-diet program, such that "if the patient['s] care provider ordered or

27   recommend[ed] [any of the eliminated] diets, the patient would [be able] to receive it."

28   (Oppo. at 3.)  However, Plaintiff does not point to any evidence showing that such an

United States District Court

For the Northern District of California

1  exception existed within PBSP medical-diet policies, nor does he offer a declaration

2  from any of his doctors to support his allegations.  Hartman and Bree submit the

3  declaration of PBSP's then Chief Physician, Dr. Sayre, who states that there were no

4  such exceptions to the medical-diet program.  (M. Sayre Decl., at 2; Docket No. 111.)

5     **2.** **Hepatitis-C Virus**

6    Defendants' medical expert Dr. Shittu also would testify, if called to do so, that

7  with respect to Plaintiff's status as a hepatitis-C virus patient, Plaintiff's medical records

8  show that his liver was not de-compensated in 2005.  (Id.)  According to Dr. Shittu, an

9  ALT test measures the levels of the ALT protein in blood and is used to monitor liver

10  damage.  Plaintiff's liver-function tests, specifically his ALT readings, were normal in

11  2005.  (Id., Ex. A at 65, 75, 83, 95, 105, 118, 157.)  Dr. Shittu also states that a liver

12  biopsy is a more specific indicator of liver de-compensation, and he notes that Plaintiff

13  had a liver biopsy in 2004 that showed that his hepatitis-C virus was at Stage 2.  (Id. at

14  21.)  Only patients who are considered to have de-compensated cirrhosis, as indicated

15  by Stage 4 or higher, require a special medical diet.  (Id.)

16    Dr. Shittu concludes that a special diet was not a medical necessity for Plaintiff's

17  stage of hepatitis, and that in his opinion Plaintiff received an appropriate diet for his

18  stage of hepatitis-C infection in 2005.  (Id.)  Plaintiff argues that he should not have to

19  wait until his liver becomes de-compensated to get a special medical diet, (Oppo. at 4),

20  but he makes no attempt to refute the diagnosis that his hepatitis-C was at Stage 2.

21  Under these circumstances, "[a] difference of opinion between a prisoner-patient and

22  prison medical authorities regarding treatment does not give rise to a § 1983 claim."

23  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly, a showing of

24  nothing more than a difference of medical opinion as to the need to pursue one course

25  of treatment over another is insufficient, as a matter of law, to establish deliberate

26  indifference, see Toguchi, 391 F.3d at 1058, 1059-60; Sanchez v. Vild, 891 F.2d 240,

27  242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).

28    Plaintiff also alleges that he developed anemia as a result of his diet.  (Oppo. at

6.)  However, he offers no evidence to support this allegation.  Hartman states that she spoke with Plaintiff about his dietary needs as a hepatitis-C virus patient, and specifically discussed his concern about a Vitamin K deficiency.  Hartman assured Plaintiff that he needed such a small amount that a deficiency was unlikely.  <u>See</u> supra at 6.  She also advised him that he could purchase a multi-vitamin from the canteen if he was still uncertain that his dietary needs were being met.  <u>Id.</u>  As discussed above, Plaintiff's difference of opinion as to that advice does not give rise to a § 1983 claim. <u>Franklin</u>, 662 F.2d at 1344.

### 3.    **Claims against Bree**

Plaintiff has also failed to show that Bree acted with deliberate indifference to his medical needs.  According to the medical records, Bree met with Plaintiff on various occasions to address his concerns about his diet.  In each instance, Bree noted Plaintiff's concerns and made appropriate referrals to dieticians and physicians.  Plaintiff alleges that Bree told him on one occasion that "if [she were to] give [peanut butter crackers] to [plaintiff], every inmate will want it," (Oppo. at 9), and Plaintiff appears to base his deliberate indifference claim on this single statement.  However, as discussed above, Plaintiff has not shown that his medical condition required peanut butter crackers or other additional snacks, or that a failure to provide such snacks would result in substantial risk of serious harm.  <u>Farmer</u>, 511 U.S. at 837.  Plaintiff also points to no facts from which the inference of a substantial risk of serious harm could be drawn or that Bree in fact drew the inference yet failed to act.  <u>Id.</u>

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, (Docket No. 94), is GRANTED.[2]  All claims against them are DISMISSED with prejudice. Plaintiff's cross-motion for summary judgment, (Docket No. 107), is DENIED.

---

[2] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.

United States District Court

For the Northern District of California

This order terminates Docket Nos. 94 and 107.

DATED: 3/30/11

JEREMY FOGEL
United States District Judge

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

FREDERICK W. SMITH,

        Plaintiff,

  v.

LORI BREE, et al.,

        Defendants.

_____/

Case Number: CV06-00103 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on ___3/30/11_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Frederick Wayne Smith C-69967
Salinas Valley State Prioson
PO Box 1040
Soledad, CA 93960

Dated: ___3/30/11_____

                                   Richard W. Wieking, Clerk